THELMA YOUNT, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 87404, 89595. Promulgated December 29, 1938.

*A. G. Bush, Esq., Robert Ash, Esq.,* and *H. L. Fisher, Esq.,* for the petitioner.

*Edward C. Adams, Esq.,* and *Frank T. Horner, Esq.,* for the respondent.

1462

OPINION.

Murdock: The question in this case is whether the petitioner is liable as a withholding agent for income tax due from the Mexican corporation, Cia. That question does not depend solely upon whether tax was due from the Mexican company. The Commissioner can not succeed unless the petitioner was a withholding agent under the terms of the statute, and as such was required to withhold some tax due from the Mexican corporation. The latter is a foreign corporation and is subject to tax only upon income from sources within the United States. Doubts as to the meaning of the statutes must be construed in favor of the petitioner, even though the result is that the Government will not be able to collect in this proceeding some tax which might be lawfully due from the Mexican corporation.

Section 144 of the Revenue Act of 1934 is entitled "Payment of Corporation Income Tax at Source." It provides:

In the case of foreign corporations subject to taxation under this title not engaged in trade or business within the United States and not having any office or place of business therein, there shall be deducted and withheld at the source in the same manner and upon the same items of income as is provided in section 143 a tax equal to 13¾ per centum, and such tax shall be returned and paid in the same manner and subject to the same conditions as provided in that section * * *.

Section 143 (b) describes the withholding agent as "All persons, in whatever capacity acting, * * * having the control, receipt, custody, disposal, or payment of * * * rent, * * * compensations, remunerations, emoluments, or other fixed or determinable annual or periodical gains, profits, and income * * *." Every person required to deduct and withhold any tax under this section is required to make a return and to pay the tax. Every such person is made liable for the tax. Supplement I of the Revenue Act of 1934 is entitled "Foreign Corporations." Gross income of a foreign corporation is defined as including only the gross income from sources within the United States. Gross income from sources within the United States is defined in section 119. It includes compensation for labor or personal services performed in the United States, but does not include compensation for labor or personal services without the United States or rentals or royalties from property located without the United States. Income from sources partly within and partly without the United States is also defined. The statute provides:

Gains, profits, and income from—

(1) transportation or other services rendered partly within and partly without the United States * * * shall be treated as derived partly from sources within and partly from sources without the United States.

The statute further provides for the allocation of a part of such income to sources within the United States "by processes or formulas of general apportionment prescribed by the Commissioner with the approval of the Secretary." The corresponding provisions of the Revenue Act of 1936 are substantially similar.

It is important to note that if the foreign corporation is engaged in trade or business within the United States, or if it has an office or place of business within the United States, there is no liability upon anyone as a withholding agent under the above mentioned provisions. The respondent contends that the Mexican corporation had no office or place of business in the United States and was not engaged in trade or business in the United States, yet it conducted commerce within the United States from which it derived the income in question, and, therefore, that income was from sources within the United States. He cites in support of his contention that the Mexican corporation was engaged in commerce within the United States, *Fisher's Blend Station, Inc.* v. *State Tax Commission*, 297 U. S. 650, and *United States* v. *American Bond & Mortgage Co.*, 31 Fed. (2d) 448. The following is quoted from the opinion of the Supreme Court in the former case:

Appellant is thus engaged in the business of transmitting advertising programs from its stations in Washington to those persons in other states who "listen in" through the use of receiving sets. In all essentials its procedure does not differ from that employed in sending telegraph or telephone messages

across state lines, which is interstate commerce. *Western Union Telegraph Co. v. Speight,* 254 U. S. 17; *New Jersey Bell Tel. Co.* v. *State Board of Taxes,* 280 U. S. 338; *Cooney* v. *Mountain States Tel. & Tel. Co.,* 294 U. S. 384; *Pacific Tel. & Tel. Co.* v. *Washington, ante,* p. 403. In each, transmission is effected by means of energy manifestations produced at the point of reception in one state which are generated and controlled at the sending point in another. Whether the transmission is effected by the aid of wires, or through a perhaps less well understood medium, "the ether" is immaterial, in the light of those practical considerations which have dictated the conclusion that the transmission of information interstate is a form of "intercourse," which is commerce. See *Gibbons* v. *Ogden,* 9 Wheat. 1, 189.

\* \* \* \* \* \* \*

As appellant's income is derived from interstate commerce, the tax, measured by appellant's gross income, is of a type which has long been held to be an unconstitutional burden on interstate commerce \* \* \*.

Respondent also gives the following quotation from the *American Bond & Mortgage Co.* case:

▐ It does not seem to be open to question that radio transmission and reception among the states are interstate commerce. To be sure it is a new species of commerce. Nothing visible and tangible is transported. There is not even a wire, over which "ideas, wishes, orders, and intelligence" are carried. A device in one state produces energy which reaches every part, however small, of the space affected by its power. Other devices in that space respond to the energy thus transmitted. The joint action of the transmitter owned by one person and the receiver owned by another is essential to the result. But that result is the transmission of intelligence, ideas, and entertainment. It is intercourse, and that intercourse is commerce.

The respondent argues that the broadcasts over station XENT for the American advertisers were intended to reach listeners within the United States, and therefore, Cia was engaged in carrying on commerce in the United States. However, he seems inextricably caught on the horns of a dilemma in this argument. If Cia was engaged in carrying on commerce in the United States, then the further conclusion would seem to follow inevitably that it was engaged in business in the United States, and if it was engaged in business within the United States, then the petitioner is not liable as a withholding agent. Whereas if Cia was not engaged in carrying on commerce in the United States, then the Commissioner's argument that it had income from sources within the United States would fail and the petitioner would not be liable as a withholding agent because no tax would be due from the foreign corporation. It may be that Congress could have taxed a part or all of the income in question by requiring it to be withheld in the hands of this petitioner, but it does not appear that Congress has done so. The question of whether or not a foreign corporation does business within the United States by broadcasting a program from a foreign country designed for listeners within the United States is one which may have to be decided in later cases. We shall refrain from deciding it at this

time, since the Commissioner must lose in this proceeding regardless of how it might be decided.

Reviewed by the Board.

*Decision will be entered for the petitioner.*

---

SMITH, concurring: The respondent asks the Board to find that "Cia had no office or place of business in the United States and was not engaged in any trade or business therein." In his brief the respondent states: "The entire income which the respondent seeks to tax came from the United States and it was paid to Cia solely because of the commerce which Cia carried on in the United States." In the opinion of the Board it is stated: "The question of whether or not a foreign corporation does business within the United States by broadcasting a program from a foreign country designed for listeners within the United States is one which may have to be decided in later cases." It seems to me that the question which the Board refuses to answer is inherent in this case. It is the whole predicate for the respondent's argument that the petitioner is liable to tax as withholding agent. I think that it should be held that a foreign corporation does not transact business within the United States simply by broadcasting a program from a foreign country designed for listeners within the United States. There is no merit in the respondent's contention upon this point. The petitioner was not a withholding agent within the purview of the taxing statute.